## Case No. 10,678.

### In re PALMER.

[2 Hughes, 177;[1] 14 N. B. R. 437.]

Circuit Court, E. D. Virginia.　May 31, 1876.

BANKRUPTCY — DISCHARGE—AMOUNT OF ASSETS— ATTEMPT TO EVADE STATUTE—FRAUD UPON THE LAW.

1. P., a bankrupt, whose assets are not sufficient to entitle him to his discharge, obtains the necessary consent thereto of more than one-fourth in number and one-third in value of his creditors, who proved their claims, and to whom he is bound as principal debtor. Desiring to obtain also the consent of M., another creditor, "to strengthen his application for discharge," he gives him a note for forty dollars, with security, and, in consideration thereof, M. signs the paper consenting to P.'s discharge. R. & Co., another creditor, oppose the discharge because of the above transaction with M. *Held,* that this transaction was a violation of section 29 of the bankrupt act [14 Stat. 531], and the discharge must be refused.

[Cited in Re Antisdel, Case No. 490; Re Douglass, 11 Fed. 406.]

2. The right of a bankrupt to his discharge depends entirely upon the statute, and he can only demand it when he has complied with all of the prescribed conditions. If he has not complied with them all, his position is that of one who is unable to bring himself within the provisions of an act granting discharge from debts upon certain conditions.

3. The courts are as much bound by the provisions of the act as the bankrupt himself, and if it appear, in the regular course of proceedings, that an applicant for a discharge has failed in any particular to perform his duty as a bankrupt, the application must be refused.

[Cited in Re Antisdel, Case No. 490.]

4. It is not the necessity of the act which makes it a fraud upon the law, but the statute itself.

5. Perfect equality among creditors is the fundamental principle upon which the bankrupt law proceeds; anything which defeats that is a fraud upon the law.

6. The obligation incurred to one creditor, as the price of his assent (to a discharge), is as much a fraud upon those who had before signed the certificate of assent as upon those who had not.

7. The act of preference placed the bankrupt outside the statute, and made it the duty of the court to withhold the discharge.

8. The court is not to inquire whether the act complained of has been productive of harm, but whether it has been done. If done, one of the conditions precedent to the discharge has not been performed, and the case is not brought within the statute.

[Appeal from the district court of the United States for the Eastern district of Virginia.]

E. V. Palmer filed his petition in bankruptcy on June 30th, 1874, in the United States district court for the Eastern district of Virginia, at Richmond. His appli-cation for discharge was opposed by one of his creditors, Rogers & Co., they alleging that his assets were not equal to thirty per centum of the debts proved against him, upon which he is bound as principal debtor. The deficiency of assets was certified by the register to the court in the certificate of conformity, which also states that in all other respects the register finds the proceedings in conformity with the requirements of the act. Thereupon the bankrupt procured and filed a paper, executed by one-fourth in number and one-third in amount of his creditors who had proved their debts, consenting to his discharge without his being required to pay or have assets equal to thirty per centum of the claims proved against his estate, and the register reports that the following named creditors have proved their debts, i. e., Rogers & Co., for five hundred and fifty-five dollars and ninety-seven cents; Gibson & Crilly, for fifty-one dollars and sixty-two cents; Carrington & Morton, for eighty-two dollars and thirty-four cents; Charles White, seventy-five dollars; L. S. Baugham, five hundred dollars; total, one thousand two hundred and sixty-four dollars and ninety-three cents. That of these the first two oppose the bankrupt's discharge, because the assets are not equal to thirty per centum of the debts proved against him; but the three latter, who are more than one-fourth in number, representing more than one-third in amount of all the debts proved against the bankrupt, have united in assenting to his discharge. The report was dated February 9th, 1876, and on the same day Rogers & Co., by their counsel, James N. Dunlop, indorsed upon it an objection to Palmer's discharge, the ground of which was, that the signature of one of the creditors to the consent paper just referred to was procured by pecuniary considerations, or obligations contrary to the bankrupt law, and upon their application the bankrupt, Palmer, one of the signing creditors, Morton, and the bankrupt's agent or attorney, Atkinson, were examined by the register, and gave the following evidence tending to sustain the charge of Rogers & Co.:

The bankrupt, Palmer, in answer to a question as to whether he had obtained any creditor's assent to his discharge by any promise or any other consideration made to them in regard to the payment of their debts, admitted that when Morton was asked to sign the consent paper, he said he did not think he ought to lose all of his debt; that he (the bankrupt) did then promise one-third, and gave him his note for that amount, indorsed by Mrs. Baugham; but he also said that he had always intended to pay this debt when he was able; and, in answer to the register's question, "whether he did not know, when he gave Morton this promised note, that it was in violation of the bankrupt act, and would militate against his discharge," he said he did not know it.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

One of the signing creditors, H. S. Morton, testified that he had been requested by Mr. T. Atkinson to sign the consent paper in controversy; but that he had replied that he was hand and glove with Mr. Dunlop (counsel for Rogers & Co.) in opposing the discharge. That Atkinson then told him that they had a sufficient number of consents to the paper anyhow; that he (witness) then said that if Palmer wants his creditors to consent to his discharge, he ought to be prepared to pay them something on their debts; that Atkinson repeated that they had names enough to the paper, but that he would go and see Palmer, with whom he soon afterward returned, and said, "We will give you fifty cents on the dollar;" that, after some inquiry as to the exact amount of the debt, witness agreed to take Palmer's negotiable note, with Mrs. Baugham as indorser, for forty dollars, which he there and then filled up and gave Palmer to have indorsed, and signed the consent to the discharge; and that most unquestionably the promise of the note with the indorser was the inducement to him to consent to the discharge, without which he would not have agreed to it, as he had already told Atkinson that he had appeared in court with Mr. Dunlop for the purpose of resisting Palmer's application. On cross-examination this witness stated further that Atkinson had told him, when he first called to ask him to sign the consent paper, that they had a sufficient number of names to the paper without his; but that he wanted to get as many as he could, and that Palmer had often expressed a desire to pay witness's claim, and would pay it as soon as he could get out of his trouble. Witness also said that at the same time he signed the consent paper, he filled up a blank form of a negotiable note, and gave it to Palmer to sign and get the indorsement, and that this note was subsequently returned to him duly executed, and that he would never have consented to the discharge but for this consideration.

T. Atkinson, after testifying as to some matters not bearing upon this issue, and not alluded to on the hearing, corroborated Mr. Morton's statements generally, and furthermore said that he was aware when he applied to Mr. Morton that there were enough signatures to the consent paper without his, but that he desired his name to strengthen the application.

Upon this record Palmer went to a hearing upon his petition for discharge. The case was heard by Judge Hughes, February 10th, 1876, who made the following order: "The signature of Henry S. Morton to the paper consenting to the discharge of the bankrupt was unnecessary, a sufficient number of creditors having already signed it. The bankrupt having already become entitled to his discharge, an opposing creditor should not be allowed to defeat it by exacting or accepting a new promise for his claim. The discharge is granted. R. W. Hughes, District Judge."

From this order Rogers & Co. appealed to the supervisory jurisdiction of the circuit court, alleging the procurement of Morton's consent to the paper was a violation of the provisions of the bankrupt act, and that the district court should therefore have refused to grant the discharge. They filed their petition February 19th, 1876.

James N. Dunlop, for petitioners.
Chastain White, for bankrupt.

WAITE, Circuit Justice. No discharge can be granted under section 29 of the bankrupt act, "if he (the bankrupt), or any person in his behalf, has procured the assent of any creditor to a discharge, or influenced the action of any creditor, at any stage of the proceedings, by any pecuniary consideration or obligation." In this case the assets of the bankrupt were not equal to thirty per centum of the claims against his estate, upon which he was liable as principal debtor. In order to obtain his discharge it became necessary for him to procure the assent of one-fourth of his creditors in number and one-third in value. 18 Stat. 180.

The case shows that the debts proved amounted to one thousand two hundred and sixty-four dollars and ninety-three cents, and that the creditors were five in number. On the 3d of February, 1876, the bankrupt procured the required assent of two of his creditors having claims to the amount of five hundred and seventy-five dollars. He had then all that was necessary in number and value of creditors to entitle him to a discharge, notwithstanding the deficiency of assets. Before asking a hearing upon his petition for discharge, however, on the 7th day of February, he made application to another creditor, having a claim of eighty-two dollars and thirty-four cents, for his assent, and, in order to procure it, executed to him a note for forty dollars, with an indorser as security. On the 9th of February, he went to a hearing upon his petition for discharge, presenting a paper signed by three creditors assenting thereto. It was objected that the assent of one of the creditors had been procured for a pecuniary consideration or obligation. The court overruled the objection, and granted the discharge, upon the ground that the assent of the creditor to whom the compensation was paid or obligation given was unnecessary, as a sufficient number of creditors had already signed. The judge, in delivering his opinion, remarked that "the bankrupt having already become entitled to his discharge an opposing creditor should not be allowed to defeat it by exacting or accepting a new promise for his claim."

The testimony shows clearly that the bankrupt made application to the creditor for

his assent. This application was at first refused, but finally granted upon the execution of the note. There was no fraud or concealment on the part of the creditor. The bankrupt was desirous to obtain his signature, and for that purpose was willing to assume the required obligation. The right of a bankrupt to his discharge depends entirely upon the statute. He can only demand it when he has complied with all the conditions prescribed. The courts are as much bound by the provisions of the act as the bankrupt himself. If it appears in the regular course of proceedings that an applicant for a discharge has failed in any particular to perform his duty as a bankrupt, the application must be refused. His discharge is not forfeited, for he never had it. His position is that of one who is unable to bring himself within the provisions of an act granting discharge from debts upon certain conditions. Here it is unquestionable that a pecuniary obligation was incurred to obtain the assent of one creditor, before any attempt was made to use the assents which had before been given. It is not the necessity for the act which makes it a fraud upon the law, but the act itself. Perfect equality among creditors is the fundamental principle upon which the bankrupt law proceeds; anything which defeats that is a fraud upon the law. The obligation incurred to the one creditor, as the price of his assent, is as much a fraud upon those who had before signed the certificate of assent as upon those who had not. The act of preference placed the bankrupt outside the statute, and made it the duty of the court to withhold the discharge. The court is not to inquire whether the act complained of has been productive of harm, but whether it has been done. If done, one of the conditions precedent to the discharge has not been performed, and the case is not brought within the statute.

The order of the district court granting the discharge in this case is reversed, and the cause remanded, with instructions to refuse a discharge upon the showing made.

The following was the decree: "This cause came on this day to be heard upon the petition of M. M. Rogers and —— Rogers, partners, under the style of Rogers & Co., for a review of the order of the district court, entered on the 10th February, 1876, granting the bankrupt a discharge, and was argued by counsel, upon consideration whereof, it being the opinion of the court, for reasons set forth in a note in writing, filed with the papers in the cause, and ordered to be made a part of the record, that the bankrupt is not entitled to be discharged upon the showing made, the court doth adjudge, order, and decree that the order of the district court granting the discharge in this case be reversed, and the cause remanded, with instructions to refuse a discharge (upon the showing made), and that the petitioners recover of E. V. Palmer their costs by them about their petition in this behalf expended."