## In re PARAMOUNT PUBLIX CORPORATION.

### HILLES et al. v. WISEMAN.

### No. 271.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

---

P. Aronson, both of New York City, of counsel), for appellant.

Root, Clark, Buckner & Ballantine, of New York City (Arthur A. Ballantine, of New York City, of counsel), for appellees, Charles D. Hilles and Eugene W. Leake, as Trustees of Paramount Publix Corporation.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The estate of the debtor was placed in the hands of the court in the early part of 1935 in an equity receivership. Thereafter, trustees in reorganization proceedings under section 77B of the Bankruptcy Act, as added by Act June 7, 1934, § 1, 48 Stat. 912 (11 U.S.C.A. § 207), were appointed. The estate in equity receivership was turned over to the trustees, the appellees in this proceeding. The trustees, pursuant to court authorization, instituted three suits in the state court against former officers, directors, and bankers of the debtor corporation seeking to recover, because of certain transactions, large sums of money for the debtor's estate. The appellant, Sir William Wiseman, having been an officer of the debtor until five months after the institution of the 77B proceedings, is a defendant in two of these suits. An order was entered for the examination of 70 persons including the appellant, under section 7 (9) and section 21a of the Bankruptcy Act, as amended (11 U.S.C.A. §§ 25 (9), 44 (a) and the appellant moved to vacate the order so far as it was applicable to him, and to set aside a subpœna which was served pursuant thereto.

The plan of reorganization for the debtor was confirmed April 4, 1935. June 17, 1935, the District Court entered a turnover order which directed the trustees to turn over to the debtor the assets and property tangible and intangible of every kind and description except the actions, claims, and causes of action arising out of the transactions with respect to which the three suits mentioned above had been instituted in the state court. The order reserved to the trustees the right to prosecute such suits as though no plan of reorganization had been confirmed, and stipulated that the proceeds of the reserved actions should be paid over by the trustees to the debtor at such time and in such manner as the court might from time to time determine. The order relieved the trustees of any other

Proskauer, Rose & Paskus, of New York City (Joseph M. Proskauer and Jacob

duties in the administration of the debtor's estate, provided that the debtor's possession of its assets and the operation of its business should be free from further court control, except as necessary to the execution of the plan of reorganization, and lifted the injunction on the debtor's use and disposal of his property. The injunction was continued in so far as it restrained stockholders and creditors of the debtor from attaching or levying on its property until after final decree in the proceedings. The court reserved jurisdiction to fix and direct the payment of administration expenses, allowances, and fees for services rendered in the reorganization, to make orders disposing of claims filed and not yet settled, to permit additional claims to be filed nunc pro tunc and to make orders deemed proper by the court as to the issuance of new securities distributable therefor, and to make orders on certain other matters. The court specifically reserved jurisdiction to make orders authorizing the trustees to conduct examinations under sections 7 (9) or 21a of the Bankruptcy Act. Finally, there was reserved jurisdiction to enter a final decree discharging the debtor from its debts and liabilities existing prior to the closing time and terminating and ending all rights and interests then existing of its stockholders, except as provided in the plan, discharging the trustees and closing the case. The debtor, with its name changed, became the new company under the plan.

The conduct of the suits in the state court was left in the hands of the trustees because some of the defendants in the suits were to be officers and directors of the new company. This provision for the prosecution of the suits by trustees was embodied in the plan and carried out in the turnover order as stated above. The order questioned here was entered after the turnover order pursuant to the jurisdiction reserved therein.

Section 21a of the Bankruptcy Act, as amended (11 U.S.C.A. § 44 (a), provides: "A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt and his wife, to appear in court or before a referee or the judge of any state court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under the provisions of this title."

■ This section applies to proceedings under section 77B. In re Fox Metropolitan Playhouses, Inc., 74 F.(2d) 722 (C.C.A.2).

There is a controversy here, however, as to (a) whether the estate is still in the process of administration, and (b) whether the order was improper as granted for the sole purpose of enabling the trustees to prepare their pending suits for trial.

■ The estate is still in the process of administration. The court still retains control over an important asset of the estate, namely, the causes of action set up in the three suits. Section 77B (h) of the Bankruptcy Act (11 U.S.C.A. § 207 (h) provides: "Upon the termination of the proceedings a final decree shall be entered discharging the trustee or trustees, if any * * * and closing the case." See, also, section 2 (8) of the act (11 U.S.C.A. § 11 (8), giving the bankruptcy court jurisdiction to "close estates, whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and reopen them whenever it appears they were closed before being fully administered." These sections contemplate a distinction between the conclusion of the administration of the estate and a formal closing of the estate. There can be a time when the estate is fully administered and yet not closed. Thus the statement in Skubinsky v. Bodek (C.C.A.3) 172 F. 332, 338, 24 L.R.A.(N.S.) 985, 19 Ann.Cas. 1035, that a witness may be summoned at any time after the commencement of proceedings until the estate is closed by order of the court may go too far. However, as long as there is an asset, tangible or intangible, in the court's control, the estate may be considered to be in administration. In Bilafsky v. Abraham, 183 Mass. 401, 67 N.E. 318, an estate was held not to be fully administered under the section last quoted above while the bankrupt had a cause of action not realized upon, and although the estate had been closed, proceedings were reopened to prosecute suit for the benefit of the estate. Stephan v. Merchants' Collateral Corp., 256 N.Y. 418, 176 N.E. 824, similarly outlined the reopening of an estate as the proper procedure for prosecuting a claim of the bankrupt existant at the time of the closing. This court in Re Schreiber, 23 F.(2d) 428, likewise allowed the reopening of an estate where the bankrupt at the time of closing had an asset consisting of a claim to a tax refund.

These cases allowing an estate to be reopened, proceeded on the ground that the estate was not fully administered while there was a valid cause of action in favor of the bankrupt. A like situation prevails here. There are assets of the estate outstanding and in the court's control. Trustees are obligated to collect these assets under the direction of the court by section 47a (2) of the Bankruptcy Act, as amended (11 U.S.C.A. § 75 (a) (2), and until this duty is discharged and the assets collected are out of the court's hands, the estate is still in administration. In re J. A. M. A. Realty Corporation (C.C.A.) 79 F. (2d) 546, holds nothing to the contrary. Anything supporting the appellant's position which can be taken from that case must be regarded as a dictum.

The appellant's position, that the test of whether the estate is in the process of administration must be determined entirely by the status of the plan for distribution of the assets to the creditors, is not adaptable to 77B proceedings. This statute contemplates continuation of the business and payments by securities of the debtor. The payment of the proceeds of these suits to the debtor will benefit the corporation by strengthening its financial position and its security holders will be correspondingly helped.

As to the second question, the appellant relies on a quotation from In re Fixen & Co. (D.C.S.D.Cal.) 96 F. 748, 755: "The examinations thus provided for are not intended as means of producing testimony pertinent to issues then on trial, but their object is to afford to the creditors, and the officer charged with administering the trust, full information touching the bankrupt's estate, in order that necessary steps may be taken for its possession and preservation." This rule may provide a workable distinction where the issues then on trial are not concerned with recovery of or realization upon the property of the bankrupt. Cf. Abbott v. Wauchula Mfg. & Timber Co., 229 F. 677 (C.C.A.5); Rawlins v. Hall-Epps Clothing Co., 217 F. 884 (C.C.A.5). But even the Fixen Case says: "The purpose of the statute seems to be, by a thorough investigation of the case, and an appeal to the conscience of the party suspected, to enable the assignees to judge whether they will proceed to claim such property for the general creditors, and to obtain evidence to aid them in prosecuting such claim." To allow an investigation to discover what property the bankrupt might have, and still to disallow an examination where the process of recovery on a claim has gotten under way, would be an absurd result. If the information obtained here is not to be used in facilitating a recovery in the three suits, of what is owed the bankrupt, the examination is entirely useless. The cases have not abided by the literal terms of the generality in the Fixen Case, supra, that the purpose of examination is not to provide a means of producing testimony pertinent to the issues then on trial. In re Fay (D.C.Mass.), 8 Fed.Cas. page 1111, No. 4708, holding that a witness was not privileged to refuse to testify in a bankruptcy examination on the ground that his answers might furnish evidence against him in a civil suit brought by the assignee, the court said: "The main, if not the only, purpose of the statute authorizing such an examination is to enable the assignee to obtain evidence for civil suits, or to ascertain that there is no such evidence." In re Goodwin, 38 F.(2d) 669 (D.C.Mass.), allowed an examination although the trustee admitted he desired to examine the witness to prepare for trial a case against a company in which the witness was an officer. In Re E. S. Wheeler & Co., 158 F. 603, we allowed an examination of an officer of a defendant company, in aid of the trustee's suit. In re A. & W. Nesbitt, Ltd., 282 F. 265 (C.C.A.2), and In re Underwriters Financial Corp. (D.C.S.D. N.Y. Oct. 25, 1935) 13 F.Supp. 690, also allowed examinations, and the existence of pending suits did not protect interested witnesses from examination on issues pertinent to those suits.

To be sure, there are limits to the scope of the examination which may be within the province of the examiner, but to reverse the order here would be to hold that the witness could tell nothing about the acts, conduct, and property of the bankrupt or that what he could tell could not be used in reducing the claim to possession, because it is to be used in preparing the pending cases. Cameron v. United States, 231 U. S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448, said that: "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it."

The most evident means for coming into possession of the debtor's property here is to prosecute these suits on its claims. It

would pervert the declared object of the statute to disallow the examination because the information was sought to be used in these suits.

Order affirmed.